**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

SHERITA SMITH,                                                           PLAINTIFF

v.                                        NO. 4:09CV00383 JMM/BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,                                          DEFENDANT

## RECOMMENDED DISPOSITION

**I.      Procedure for Filing Objections and Introduction**

This recommended disposition has been submitted to United States District Judge

James M. Moody.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than fourteen (14) days from the date you receive the Recommended Disposition.  A copy

of objections must be served on the opposing party.  Failure to file timely objections may

result in waiver of the right to appeal questions of fact.  The District Judge, even in the

absence of objections, may reject these proposed findings and recommendations in whole

or in part.

Mail objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.   **Background**

Plaintiff Sherita Smith brings this action for review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her

claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act

(the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the

Act.  For the reasons that follow, the Court recommends that the District Court affirm the

final decision of the Commissioner.

Plaintiff filed her applications for DIB and SSI on May 12, 2006.  (Tr. 119-24)

Plaintiff alleges she became disabled on November 15, 2001, due to mitral valve

prolapse, back pain, depression, anxiety, strep throat infections, anemia, and arthritis.

(Tr. 27, 29, 66, 119-124, 132)  At Plaintiff's request, an Administrative Law Judge

("ALJ")[1] held a hearing on June 2, 2008.  (Tr. 60-93)  On September 12, 2008, the ALJ

issued a decision denying Plaintiff benefits.  (Tr. 27-38)  The Plaintiff requested review

and provided new evidence to the Appeals Council.  (Tr. 5-23)  The Appeals Council

---

[1] The Honorable Troy M. Patterson.

2

considered the evidence but denied review.[2]  (Tr. 1-4)  Accordingly, the decision of the

ALJ is the final decision of the Commissioner, and this Court must determine "whether

the record as a whole, including the new evidence, supports the ALJ's determination."

*Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000).

Plaintiff was 26 years old at the time of the hearing.  (Tr. 64)  She had graduated

from high school and had taken three years of college courses.  (Tr. 64, 174-78)  She had

past work experience in retail sales and as a personal care attendant.  (Tr. 89)  At the time

of the hearing, Plaintiff lived with her two children.  (Tr. 84)

III.   **Findings of the ALJ**

The ALJ followed the required five-step sequence to determine: (1) whether the

claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a

severe impairment; (3) if so, whether the impairment (or combination of impairments)

met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart

P, 20 C.F.R. Part 404 (hereinafter "a Listing"); (4) if not, whether the impairment (or

combination of impairments) prevented the claimant from doing past relevant work; and

(5) if so, whether the impairment (or combination of impairments) prevented the claimant

from performing any other jobs available in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g) (2005).

---

[2] The new evidence considered by the Appeals Council was a medical statement
from Richard Owings, M.D., dated October 7, 2008, and a report from an MRI on
Plaintiff's lumbar spine dated September 15, 2008.  (Tr. 4)

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2007.  (Tr. 29)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2001, her alleged onset date.  (Tr. 29)  The ALJ found that Plaintiff had the following severe impairments:  mitral valve prolapse, depression, anemia, and arthritis.  (Tr. 29)  The ALJ also found that Plaintiff did not have a "listed" impairment or combination of impairments.  (Tr. 30-32)  The ALJ determined that Plaintiff did not have the residual functional capacity ("RFC") to perform her past relevant work.  (Tr. 36)  He directed a finding of "not disabled" because he concluded that Plaintiff had the residual functional capacity to perform unskilled light work where interpersonal contact is routine, but superficial, and where there is minimal contact with the public.  (Tr. 34)

## IV.   Analysis

### A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision.  42 U.S.C. § 405(g).  "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion."  *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).  In reviewing the record as a whole, the Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a

conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F.3d 575, 578 (8th Cir. 2006).

B.    *New Evidence*

Plaintiff attached the following new evidence to her brief: (1) a Little Rock Community Mental Health Center, Inc. Treatment Plan dated April 3, 2009; (2) correspondence from James Shea, M.D. dated April 16, 2009; (3) correspondence from James Shea, M.D. to Greg Niblock dated November 17, 2009; (4) a treatment record from Vestal B. Smith, Jr., M.D., dated July 1, 2009; (5) correspondence from Muhammad Shakir, M.D., dated December 7, 2007; (6) Neurological Surgery Associates, P.A. record dated March 23, 2009; and (7) medical billing records for treatment of Plaintiff from February, 2009, through March, 2010.  (#30 at pp. 9-33)  Plaintiff also attached correspondence dated July 29, 2010, that she received from the Social Security Administration regarding an application for benefits filed with the Commissioner on September 15, 2008, to a Notice of Change of Address filed with the Court.  (#32 at pp. 3-14)

Generally, courts reviewing a decision of the Commissioner regarding disability benefits are not permitted to consider evidence that is not part of the administrative record. *Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006) (citing *Delrosa v. Sullivan*, 922 F.2d 480, 483 (8th Cir. 1991)).  Under 42 U.S.C. § 405(g), a court may, however, "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that

there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." To be material, new evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination." *Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993)(citations omitted).

The ALJ found that Plaintiff's coverage ended on December 31, 2007. (Tr. 28) Consequently, the only new evidence Plaintiff attached to her brief and notice of change of address that is relevant to the coverage period is correspondence from Muhammad Shakir, M.D., dated December 7, 2007. In this correspondence, addressed "To Whom It May Concern," Dr. Shakir confirms that Plaintiff was his patient and states that she made frequent office visits. Dr. Shakir's correspondence is not new material evidence because it is cumulative to the treatment records from Dr. Shakir, which are already part of the transcript and indicate Plaintiff was a patient who frequently visited Dr. Shakir's office. (Tr. 194-210, 249-56). The other evidence Plaintiff attaches to her filings is not material because it is not relevant to the time period for which benefits were denied. Accordingly, the Court will not consider the new evidence or remand Plaintiff's case to the Commissioner for the taking of additional evidence.

C.     *The ALJ's Bias*

Plaintiff claims the ALJ was biased towards her.  In her brief, she specifically claims, "[i]n my research and questioning other attorney's [sic] including my previous one, that Judge Patterson did not like to pay younger adults, which is bias because I was 26 years of age." (#30 at p. 1)   Plaintiff also claims the ALJ was biased because he did not allow her "legal aid attorney to ask all of the questions" at the hearing and because he "interrupted her multiple times."  (#30 at p. 1)

ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased.  See *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); see also *Kittler v. Astrue*, No. 06-2225, 2007 WL 1390639, at *1 (8th Cir.  May 14, 2007) (unpublished) (affirming the ALJ's disability determination where the claimant failed to provide evidence of bias).  To rebut this presumption, a claimant must demonstrate "conflict of interest or some other specific reason for disqualification."  *Schweiker*, 456 U.S. at 195.

Plaintiff does not provide any evidence from which this Court could conclude that the ALJ had a conflict of interest with Plaintiff's case or that there was reason to disqualify this ALJ.  Plaintiff and her attorney were aware of the identity of the ALJ prior to the hearing, but did not object to the ALJ or seek his recusal prior to or during the hearing.  Nor did Plaintiff raise a claim of bias before the Appeals Council.  See *Weikert v. Sullivan*, 977 F.2d 1249, 1254 (8th Cir. 1992) (claimant's failure to raise ALJ bias at

7

the agency level ordinarily prevents the claimant from raising it in judicial proceeding) (citations omitted).

The Court has reviewed the transcript of the hearing and has not found any instances where the ALJ failed to allow Plaintiff's attorney to ask questions of the witnesses.  The ALJ did, on one occasion, ask Plaintiff's attorney to move to a different topic because the topic on which she was questioning Plaintiff had already been covered.  (Tr. 78)  This request does not, however, amount to bias.  Plaintiff's attorney questioned Plaintiff and Plaintiff's mother.  She was offered an opportunity to question the vocational expert, which she declined.  (Tr. 91)

At Plaintiff's counsel's request, the ALJ agreed to hold the record open so that Plaintiff could supplement it with additional medical records.  (Tr. 91-93)  The ALJ gave Plaintiff and her counsel ample opportunity to make a complete record.  See *Isom v. Schweiker*, 711 F.2d 88, 89 (8th Cir. 1983) (in spite of negative comments made by the ALJ regarding the claimant's testimony, the claimant was afforded fair hearing because the ALJ allowed him to make a complete record).  Accordingly, Plaintiff's claim of bias is not supported by the record.

D.    *Residual Functional Capacity*

Plaintiff claims the ALJ erred by finding she has the residual functional capacity to perform a full range of light work.  Specifically, Plaintiff claims the medications she takes cause her to be "drowsy;" she is in constant pain; cannot get along with others; cannot stand or sit for long periods of time; and cannot bend, lift, run, or climb stairs.  (#30 at pp.

8

4-5)  Substantial evidence in the record, however, supports the ALJ's finding that

Plaintiff could perform light work during the relevant time period.

Plaintiff's RFC is what she can do despite her limitations.  20 C.F.R. § 404.1545.

The ALJ bears the initial responsibility for assessing Plaintiff's RFC based on all of the

relevant evidence.  *Wlidman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).  A Plaintiff's

RFC is a medical question, and "the ALJ should obtain medical evidence that addresses

the claimant's ability to function in the workplace."  *Lauer v. Apfel*, 245 F.3d 700, 704

(8th Cir. 2001) (internal quotation omitted).  The ALJ must determine the Plaintiff's RFC

based on all relevant evidence, including medical records, observations of treating

physicians and others, and Plaintiff's own descriptions of her limitations.  *Baldwin v.*

*Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217

(8th Cir. 2001).

In this case, the ALJ considered Plaintiff's medical records in detail.  He

considered Plaintiff's complaints of heart problems.  He noted that a November 11, 2001

chest x-ray was "negative" and showed a "normal" cardiac silhouette.  (Tr. 489)

Further, a November 15, 2001 chest x-ray showed "no acute cardiopulmonary disease,"

and an EKG and check of Plaintiff's cardiac enzymes and arterial blood gases were all

normal.  (Tr. 468, 474)

In February, 2006, Anthony M. Fletcher, M.D., a cardiologist, examined Plaintiff

and concluded that her chest pain was "most likely due to mitral valve prolapse."  (Tr.

193)  Dr. Fletcher noted that she had been previously treated with Amitriptyline and a

beta-blocker but "has stopped both." (Tr. 191)  He prescribed Toprol and recommended a

stress echocardiogram. (Tr. 193)

At the hearing, Plaintiff stated that she takes Metoprolol for her heart condition,

which was prescribed by Dr. Shakir.  Plaintiff stated she takes the medication, "only

when I have an anxiety attack or my chest is in pain.  It's as needed." (Tr. 71)

The ALJ's conclusion, that in spite of Plaintiff's reports of significant limitations

due to her heart condition, she had not been compliant with taking medication prescribed

by her doctor and had not regularly sought follow-up treatment for her heart condition, is

supported by substantial evidence in the record. (Tr. 33-35)

The ALJ also considered Plaintiff's complaints of depression and anxiety. (Tr. 33)

The report of a physical examination of Plaintiff completed by Dr. Shakir in March,

2006, indicated Plaintiff had "no recent history of persistent or recurrent depression."

(Tr. 201)  Dr. Shakir, however, began treating Plaintiff for anxiety in May, 2006. (Tr.

196-97)  Dr. Shakir prescribed Elavil (amitriptyline) and referred Plaintiff to a

psychiatrist. (Tr. 197)  Dr. Shakir saw Plaintiff again in November, 2006, and Plaintiff

again complained of anxiety. (Tr. 252-53)  He prescribed Effexor, in addition to the other

medications Plaintiff was taking including Elavil, Klonopin, Prozac, and Xanax. (Tr.

253)

The record includes reports from Plaintiff's three visits to Richard A. Owings,

M.D. Ph.D., during August, September, and November, 2006. (Tr. 211-218)  The

records indicate Dr. Owings first evaluated Plaintiff in August, 2006, and diagnosed her

with depression and panic attacks.  After making the diagnosis, Dr. Owings stated

Plaintiff "should be helped by antidepressant medicine."  (Tr. 212)   Dr. Owings

prescribed Paxil and recommended psychotherapy.  (Tr. 212)

Dr. Owings treated Plaintiff again in September, 2006.  At that time, he observed

that "she did not appear particularly depressed or anxious."  (Tr. 214)  Plaintiff reported,

however, that she was not experiencing any benefit or side effects from the medication he

had prescribed.  Dr. Owings prescribed a higher dose of Paxil and continuation of

amitriptyline.

On October 3, 2006, John D. Bedwell, LCSW, wrote a letter stating that plaintiff

had been diagnosed with "Recurrent Major Depression."  (Tr. 217)  Mr. Bedwell stated

that Plaintiff was not "responding as well as we would have hoped" to her prescribed

medication but that Dr. Owings would be re-evaluating her medications soon.  Finally, he

reported that Plaintiff was taking an "active role" in her individual therapy.  (Tr. 217)

A November, 2006, progress note from Dr. Owings indicates that he had phoned in

a  prescription of Prozac for Plaintiff, but she reported not having "much benefit from it"

and was "having more problems with anxiety."  (Tr. 218)  During the visit, Plaintiff

complained about depression and anxiety and stated that she "feels that she is no better

since starting treatment."  (Tr. 218)  Dr. Owings stated that "[s]he is not limited by side

effects" and "is not having problems with sedation."  (Tr. 218)  Dr. Owings increased her

dose of Prozac and Klonopin and prescribed Xanax as needed for anxiety.  (Tr. 218)   He

also ordered Plaintiff to see Mr. Bedwell for psychotherapy.  (Tr. 218)

11

The only other medical records from Plaintiff's treating physicians relating to Plaintiff's alleged mental impairments is the Medical Source Statement completed by Dr. Owings on October 7, 2008, over nine months after Plaintiff's coverage period ended and almost two years after the medical records included in the transcript indicate that Dr. Owings treated Plaintiff.  (Tr. 5-8)   In the statement, Dr. Owings writes that Plaintiff was seen "off and on" in his office since August, 2006.[3]  Dr. Owings concluded that Plaintiff's impairment affected her "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting," but stated his findings and assessment were based on Plaintiff's "self report and assessment" as well as "her office visits."  (Tr. 7)

The Appeals Council considered Dr. Owings's statement but "gave little weight" to it because it was based on Plaintiff's self-report.  (Tr. 2)  See *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir.1993) (ALJ properly discredited physician's  statement of disability because it was based on claimant's subjective complaints of pain and was not supported by objective medical evidence).

In this case, the ALJ did not find that Plaintiff's mental impairments had <u>no</u> effect on her ability to work.  Instead, he concluded, based on the medical records and testimony, that Plaintiff's mental impairments "require a work setting where interpersonal contact is routine but superficial" and where Plaintiff has "minimal contact with the

---

[3]The record indicates Plaintiff was only treated by Dr. Owings three times in August, September, and November, 2006.  (Tr. 214, 217-18)

public." (Tr. 35)  There is substantial evidence in the record to support the ALJ's conclusion.

The ALJ also considered Plaintiff's complaints of pain as part of his RFC determination.  At the hearing, Plaintiff testified that she experienced chest pain every day.  (Tr. 78)  Plaintiff also testified that she had pain that came and went in her right arm, hand, legs, and back from stress and arthritis.  (Tr. 78-79)  Plaintiff stated she had tingling in the bottom of her foot, leg, and hand "from the anemia."  (Tr. 80)  Plaintiff testified that she used Hydrocodone for pain two times per week, but complained that it made her sleepy and it did not help much.  (Tr. 69)

On the other hand, Plaintiff also testified to having problems sleeping, and stated she took Hydrocodone, Benadryl, or Tylenol PM four to five nights per week to help her sleep.  (Tr. 74-75)  Plaintiff testified that because of the pain in her back, she could sit only two or three hours before she would have to stand and could stand only two to three hours before she had to sit.  (Tr. 81)  Plaintiff testified that she could walk for only thirty minutes before her chest began to hurt, and she had problems climbing stairs.  (Tr. 81)

X-rays of Plaintiff's ribs, left forearm, and left wrist taken December 31, 2002, after she was allegedly hit by a car, were negative for any fractures.  (Tr. 386-88)  On July 1, 2003, Plaintiff was treated at Baptist Medical Center following a motor vehicle accident.  She complained of pain in her neck and back that radiated down her legs.  (Tr. 362)  An x-ray taken of Plaintiff's cervical spine showed "no acute fractures or dislocation."  (Tr. 367)  Plaintiff was prescribed Flexeril and Lortab.  (Tr. 363)

On May 8, 2004, Plaintiff was treated at Baptist Health Medical Center following a motor vehicle accident complaining of low back pain. The x-rays of Plaintiff's cervical and thoracic spine showed "no acute fracture or dislocation." (Tr. 357) Plaintiff was given Flexeril and Tylenol #3. (Tr. 352) Results of a January 11, 2005, CT scan of Plaintiff's head, following a stress related headache, were normal. (Tr. 340)

During an October, 2006, visit to Dr. Shakir, Plaintiff complained of back pain and bilateral foot pain. He ordered lab work, the results of which were normal. (Tr. 256) On November 22, 2006, Plaintiff complained to Dr. Shakir of chest pain, joint pain, and back pain. (Tr. 252) Dr. Shakir prescribed Effexor. (Tr. 253) On February 20, 2007, Dr. Shakir noted that Plaintiff complained of chest pain and joint pain. (Tr. 249) Dr. Shakir recommended Plaintiff "restart Toprol and Xanax." (Tr. 250)

Finally, the ALJ noted that, on May 2, 2007, Brad Baltz, M.D., diagnosed Plaintiff with anemia. (Tr. 272) Dr. Baltz treated Plaintiff's anemia with iron supplements and vitamin B-12 shots. (Tr. 265, 268, 271, 274) See *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citations omitted) (impairments controlled by treatment or medication cannot be considered disabling). He also has prescribed Hydrocodone for Plaintiff's arthritis pain. (Tr. 265, 271, 274)

In assessing Plaintiff's RFC, the ALJ also considered the Plaintiff's own testimony. Plaintiff reported that on an average day she would take her children to school, go to school at UALR, go home, and pick up her children from school. (Tr. 82, 84) Plaintiff stated she was in her fourth year of college pursuing a degree in nursing.

14

(Tr. 64)  See *House v. Shalala*, 34 F.3d 691, 693-94 (8th Cir. 1994) (Plaintiff's ability to attend college full time is one factor that an ALJ may consider when determining a claimant's residual functional capacity to perform full-time work).  Plaintiff testified that in the Spring of 2008, she took 13 hours of college course work at UALR and attended class four days per week.  (Tr. 83)  In the fall of 2007, she took 12 hours and attended class three days per week.  (Tr. 83)

Plaintiff testified that over the Christmas holiday in 2007, she worked part-time at Honey Baked Ham.  (Tr. 84)  Plaintiff has a driver's license but does not drive.  (Tr. 84)  Her mother takes her to pick up her children from school.  Plaintiff shops for groceries with her mother and goes to church every other Sunday.  (Tr. 85)  See *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (a claimant's own description of her limitations is one factor an ALJ may consider when determining a claimant's RFC) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001))

Plaintiff's mother testified that she helped Plaintiff take care of her children, comb Plaintiff's hair, and shop for groceries.  (Tr. 88-89)  The ALJ found the testimony of Plaintiff's mother was inconsistent with other substantial evidence in the record and reasonably concluded that her testimony was based on an "uncritical acceptance of claimant's complaints or a potential desire to see the claimant receive benefits."

Plaintiff's testimony and the medical records from the relevant time period do not support the level of impairment Plaintiff claims.  As set forth above, there is little objective medical evidence in the record to support Plaintiff's allegations of disabling

pain, and there is testimony and other evidence in the record to support the ALJ's

conclusion that Plaintiff was capable of unskilled, light work where interpersonal contact

was routine, but superficial, and where there was minimal contact with the public.

     E.    *Plaintiff's Credibility*

Finally, Plaintiff claims the ALJ did not properly assess her credibility.  The

Commissioner has the initial duty of determining the credibility of claimants.  *Gregg v.*

*Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).  If an ALJ discredits a claimant's testimony

and gives good reason for doing so, that determination is normally entitled to deference.

*Id.* at 714.

The ALJ properly assessed Plaintiff's subjective complaints in light of *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).[4]  (Tr. 32-35)  He considered the objective

medical evidence in the record.  As set forth above, objective tests of Plaintiff's heart

were unremarkable, and while Plaintiff was prescribed medication for her heart condition,

she was not compliant with taking the medication or consistent about seeking treatment.

Plaintiff testified that she did not regularly take the pain medication prescribed for her

arthritis because of the side effect of drowsiness.  (Tr. 69)  See *Bradley v. Astrue*, 583

F.3d 1113, 1115 (8th Cir. 2009) (failure to follow a recommended course of treatment

weighs against a claimant's credibility).  As the ALJ noted, however, Plaintiff did not

---

[4] The factors to be considered under *Polaski* include the claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. See *Polaski v. Heckler*, 739 F.2d at 1322.

regularly discuss this allegedly debilitating adverse side effect with any of her treating or examining physicians.  (Tr. 33)

Further, the ALJ considered the opinions of Plaintiff's treating and examining physicians.  He noted that none of Plaintiff's treating physicians recommended that Plaintiff restrict her activities.  (Tr. 35)  *Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (an ALJ may take into account the fact that a claimant's treating physician provides few or no limitations).  The ALJ also noted that there was no evidence in the record from which he could conclude that Plaintiff required more than intermittent evaluation and treatment for any of her impairments.

Plaintiff claims the ALJ inappropriately hinged his credibility determination on her college attendance.  In her brief, Plaintiff states that even though she attended college, she did not obtain a degree, was in "student support services" for assistance, repeated classes, and withdrew from classes "constantly."  While Plaintiff's transcript supports her contention that she withdrew from some classes and received failing grades in others, from the fall of 2003 through the spring of 2008, Plaintiff was able to complete seventy-one hours toward a college degree with a grade point average of 2.38.  (Tr. 174-78)

The ALJ did not hinge his credibility decision on Plaintiff's college attendance but he considered it, along with all of the other evidence, when making his credibility determination.  (Tr. 34-36)  See *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (ALJ appropriately considered claimant's school attendance along with other factors when determining claimant's credibility); see also *Tennant v. Apfel*, 224 F.3d 869, 871

17

(8th Cir. 2000) (per curiam) (ALJ properly considered plaintiff's part-time college attendance in assessing credibility, as carrying 17 credit hours of classes while maintaining a C average appears inconsistent with allegedly disabling joint pain and fatigue); *Baker v. Apfel,* 159 F.3d 1140, 1144 -1145 (8th Cir. 1998) (the ALJ's consideration of claimant's 3.1 average as a  full-time college student along with other activities as part of his credibility analysis was appropriate).  There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms is not fully credible.

## V.    Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is ample evidence on the record as a whole to support the conclusion of the ALJ in this case. Accordingly, the Court recommends that the District Court affirm the Commissioner's decision and dismiss Plaintiff's complaint with prejudice.

DATED this 8th day of October, 2010.

_____

UNITED STATES MAGISTRATE JUDGE